276

FRED O'NEIL, *Respondent*, v. WM. W. WILSHIRE, *Appellant*, GRACE O'NEIL, *Defendant*.[1]

[1]Reported in 57 P. (2d) 1254.

*W. W. Wilshire* and *Rummens & Griffin,* for appellant.

*John J. Dunn,* for respondent.

STEINERT, J.—Plaintiff brought this action to recover damages for injuries to person and property resulting from an automobile collision. Defendant filed a cross-complaint, in which plaintiff's wife was joined as an additional defendant, and wherein damages were sought for impairment to the principal defendant's automobile. Trial before the court, without a jury, resulted in findings and conclusions favorable to plaintiff. Upon entry of judgment, the principal defendant appealed.

There are eleven assignments of error. For convenience, they may be grouped under five heads: (1) Error in holding appellant guilty of negligence; (2) error in not holding respondent guilty of negligence or of contributory negligence; (3) error in making two specific findings of fact; (4) error in the reception of certain evidence; and (5) error in awarding excessive damages.

We shall first state the case in a general way, leaving out of consideration, for the moment, those factors concerning which there is a conflict in the evidence.

At about three-thirty p. m., December 22, 1933, appellant, who had been an attorney for thirty-five years in the state of Washington, was driving his Nash sedan, weighing about four thousand pounds, east along Thomas street, in Seattle, toward Dexter avenue. Respondent, a one-armed man, accompanied by his wife, was driving his Plymouth coupe, weighing about two thousand pounds, north along Dexter avenue, toward Thomas street. Both streets are paved and intersect at right angles.

From curb to curb, Dexter avenue has a width of

seventy-four feet and Thomas street a width of forty-two feet. Approaching the intersection from the south, Dexter avenue has a down grade of six per cent, and Thomas street, approaching from the west, has a down grade of two per cent. At the southeast corner of the intersection, stands a one-story building, bordering upon and fronting the inner lines of the sidewalks. Upon the other three corners, are vacant lots.

The distance along Thomas street from Dexter avenue to Aurora avenue, which is the next parallel street on the west, is two hundred fifteen feet. The distance along Dexter avenue from Thomas street to John street, which is the next parallel street on the south, is about four hundred feet. Cross-vision of Dexter avenue, from Thomas street to John street, is unobstructed from a point some distance west of the alley midway between Aurora avenue and Dexter avenue. Of the four streets just referred to, only Aurora avenue is an arterial highway. Dexter avenue was an arterial highway at one time, but is not now. There is a double line of street car tracks in the middle portion of Dexter avenue. On the day of the accident, the streets were dry.

The two cars collided in the intersection within the east half of Dexter avenue, but whether it was at a point north or south of the center line of Thomas street is in serious dispute. The collision involved the right front wheel, right headlight and bumper of appellant's car, and the left rear wheel and fender of respondent's car. When the cars came to rest following the collision, respondent's coupe was standing, facing south, in the vacant lot on the northeast corner of the intersection, a distance of about one hundred feet from the place where the cars had collided; appellant's sedan was leaning against a fire hydrant in the parking strip a short distance north of the northeast

corner of the intersection, forty or fifty feet from the place of collision. Both cars had mounted a six-inch curb in their progress. The fire hydrant had been bent by the force of appellant's car.

Respondent sustained injuries to his head, face, shoulders, back and legs; his car was damaged, requiring repairs to the extent of one hundred fifteen dollars. Appellant sustained no injuries to his person; the repairs to his car amounted to $49.85.

We will next refer to the conflict in the evidence.

According to respondent's testimony, he was proceeding north along Dexter avenue, midway between the east rail of the car tracks and the east curb of the street, at a rate of twenty, twenty-five, or thirty miles per hour; as he entered the intersection, he slowed down, his speed diminishing to fifteen or twenty miles per hour, or possibly less, as he proceeded across; respondent had observed appellant approaching from the west two hundred feet from the intersection, but assumed that appellant, being on his left, would yield him the right of way; after respondent had entered the intersection, he observed that appellant had not only not diminished his speed, which respondent estimated at thirty miles per hour, but also that appellant was driving along the left, or north, side of Thomas street and was veering to the left as though he intended to turn north, in the intersection, onto Dexter avenue, and that appellant apparently had not seen him; respondent thereupon further diminished his speed, not knowing exactly what appellant intended to do; when respondent arrived within ten feet of the north line of Thomas street, appellant's automobile struck respondent's coupe upon its left rear wheel and fender; the force of the impact smashed the gears of respondent's car and turned it around, causing it to run backwards over the curb and into the vacant lot

at the northeast corner; respondent was thrown partly from his car, but, his feet having become entangled underneath the cowl, his head, shoulders, and back struck the pavement, causing him to be dragged along the street over the curb until his car came to rest.

Respondent also testified that one of his arms had been amputated about nineteen years before, but that for the past thirteen years, he had owned and driven an automobile; that he had a special arrangement made in the gear-shift, enabling him to control his car with comparative ease. He further testified that, just before the time of the collision, he noticed that appellant had a Christmas tree on the right side of his car. Respondent was corroborated, generally, by his wife, although she could not give any accurate estimate of speed or distances.

A disinterested witness, driving south along Dexter avenue near the intersection, testified that he saw the accident. His testimony was that appellant and respondent both approached the intersection at a rate of about thirty miles per hour; that respondent was driving well over on his own right side of the street, that he slackened his speed as he entered the intersection, and that at the time of the collision he was driving at about ten or fifteen miles per hour; that appellant did not slacken his speed at all, and that the greater portion of his car was to the left, or north, of the center line of Thomas street; that appellant did not look to his right, in the direction of respondent, but had his eyes fixed on the car driven by the witness; that after about three-fourths of the length of respondent's car had passed beyond the center line of Thomas street, it was struck in the rear portion of its left side by the front of appellant's car; that respondent's car was turned around, end for end, and was thrown backwards

completely across the sidewalk on the north side of Thomas street.

A traffic officer, who had investigated the accident shortly after its occurrence, testified that in appellant's car was a Christmas tree projecting from the rear seat out through the window and extending past the front window of the car; that during his investigation he had gotten into appellant's car and then found that the tree would obstruct the driver's view to the right; that appellant had admitted to him at that time that the tree "bothered him some;" and that after fully questioning appellant, the witness had arrested him and taken him to police headquarters, where he was booked for reckless driving.

Another witness testified that he heard the sound of the impact, looked out of the window of the building on the southeast corner of the intersection, and saw respondent's car traveling backwards over the curb and onto the vacant lot. He also testified that he saw the Christmas tree on the right side of appellant's car, and that he heard the traffic officer tell appellant that he was under arrest.

Two other witnesses testified as to respondent's competency as a driver. One of them, a friend, had accompanied respondent on many trips whereon respondent had done the driving. The other witness was, at the time, a highway patrolman. He testified that, some time before the accident, respondent had applied for a driver's license, and that he himself had given respondent a driver's test; that respondent had demonstrated his competency as a driver, had passed the test, and that his application for a license had thereupon been granted.

Appellant's version of the accident was altogether different. He testified that he had come down Aurora avenue to Thomas street, where he stopped, then

shifted into low gear and turned east into the south side of Thomas street; that he proceeded along Thomas street in low gear until he reached the alley in the middle of the block; that he then shifted into intermediate gear and proceeded at a rate of fifteen or twenty miles per hour toward Dexter avenue; that, as he approached the intersection, he slowed to twelve miles per hour, which rate of speed he maintained until the time of the collision; that, as he entered the intersection, he looked to the right and could see a distance of three hundred fifty or four hundred feet; that no car whatever was within sight in that distance; that he then proceeded forward, looking directly ahead; that when the front end of his car had come within nine and one-half feet of the east curb line of Dexter avenue, respondent's car suddenly, and without any warning, flashed by, and at the instant of collision veered slightly to its right as though respondent was trying to avoid appellant by turning into Thomas street; that respondent's car was moving at a rate of from forty to forty-five miles per hour, and that its own momentum caused it to go a distance of about one hundred thirty-five feet after colliding with appellant's car; also, that the force of the collision caused appellant's car to turn abruptly to the left and run across Thomas street, up to, and against, a hydrant, displacing it slightly; that the bumper of his car did not strike respondent's car at all, but that the rear portion of respondent's car, as it swerved to the right, struck appellant's right front wheel at its hub.

Appellant further testified that the Christmas tree which he was carrying was wholly in the rear portion of his car, did not protrude from either window, and did not obstruct his vision in the least; further, that respondent's car was not turned around by the force of the collision but traveled directly forward until it

arrived within the vacant lot, where it made a circular course, coming to rest facing south; and, finally, that the officer had not placed him under arrest, but that he himself had asked the officer to take him to police headquarters where he might report the accident. He admitted that he was subsequently booked for reckless driving. Unfortunately, appellant had no witnesses to corroborate him.

We have stated the substance of the evidence at some length for the reason that the case is largely one of fact.

At the conclusion of all the testimony, the court analyzed the evidence and expressed its view that appellant's negligence was the proximate cause of the accident, and that respondent was not guilty of contributory negligence.

Findings were subsequently made to the effect that respondent was driving his automobile on his own right-hand side in a lawful, cautious, and careful manner, and had the right of way in the intersection; that, as respondent approached the intersection, he observed appellant's car about two hundred feet away but assumed that appellant would yield to him the right of way, to which he was lawfully entitled; that appellant, in a careless manner, entered and was crossing the intersection at a rate of speed of thirty miles per hour and was driving along the left, or north, half of Thomas street; that appellant's vision was obstructed by the Christmas tree projecting from the right window of his car; that appellant, after entering the intersection, failed to observe or pay any attention to respondent's car; that, after respondent's car had entered the northeast quadrant of the intersection, the right front portion of appellant's car ran into the rear portion of respondent's car, causing the latter to turn around and run backwards over the sidewalk into the

adjacent lot; that respondent was thrown partially from his car and was dragged across the street, over the curb, and to the point where his car came to rest.

This brings us to the assignments of error.

■ It appears to us that the preponderance of the evidence supports the findings of the court that the appellant was negligent and that his negligence was the proximate cause of the injury. According to the predominant evidence, by which we are controlled, appellant entered and crossed the intersection at an unlawful rate of speed; he was on the wrong side of the street; he failed to take account of respondent's car approaching from the right, although his vision was unobstructed by anything except the tree in his own car; he failed to yield the right of way. Had appellant performed the duty resting upon him in any of these respects, the accident would not have occurred.

■ As to respondent's contributory negligence, while that matter is not so entirely free from doubt, it must be remembered that the burden was upon appellant to establish it by the preponderance of the evidence. In the face of the evidence shown by the record and the findings of the court, it is impossible for us to say that appellant has met that burden. If the accident occurred in the way that appellant contends that it did, it would seem obvious that respondent was guilty of contributory negligence. But, if, as respondent says, the accident occurred in the northeast quadrant of the intersection, that he was traveling at a lawful rate of speed, that appellant was traveling on the wrong side of the street at thirty miles per hour and veering to his left, that respondent did not know, nor have any reason to believe, that appellant did not see him, until immediately before the collision, then it is difficult to understand how he could be charged with contributory negligence.

█ Appellant also contends that respondent was guilty of contributory negligence because, being one-armed, he was operating his car with only one hand. While appellant alleged in his answer that respondent was a one-armed man, the charges of negligence alleged against respondent were excessive speed and failure to yield the right of way to appellant. As already stated, those charges were not established by the pre-ponderance of the evidence. It is unnecessary to con-sider or discuss the measure of duty resting upon one-armed drivers in cases where the particular impedi-ment gives rise, or contributes, to the accident.

█ Appellant further invokes the last clear chance rule as a basis of respondent's alleged contributory negligence. That rule has no application here because, under the facts established by the preponderance of the evidence, respondent was not aware that appellant would contest the right of way until just an instant before the collision. When he did realize it, he at-tempted to avoid the collision by slowing down and bringing his car virtually to a stop. It may be true that, if he had speeded up, instead of slowing down, he might have escaped the impact, but that is immaterial because, under the emergency then created, respond-ent did what a reasonable person might have done under the circumstances, even though subsequent events demonstrated that a different course might have had better results.

The next assignment of error relates to two specific findings made by the court: (1) that the impact of the collision turned respondent's automobile around, end for end, causing it to run backwards over the curb and one hundred feet into the vacant lot, and (2) that the Christmas tree extended from the rear of ap-pellant's car past the right front window, thereby ob-structing appellant's vision. These were both ques-

tions of fact, and the findings of the court are amply supported by the evidence.

■ The fourth assignment of error is based upon the reception of evidence touching respondent's qualifications as a competent driver. The matter of respondent's being a one-armed man was first suggested by appellant himself in his affirmative defense, and his testimony shows that he considered the impediment an element contributing to the accident. It would ordinarily be a natural inference, we think, that such an affliction would incapacitate a man from driving an automobile, particularly in places where much traffic is likely to be. Hence, the actual ability of the particular individual to operate a car would have a very important bearing on the case. For that reason, respondent offered evidence to show his competency to drive a car. The witnesses who testified on the subject were by their experience and observation qualified to do so. We think that the evidence bore upon a matter intimately connected with a material issue in the case and was properly admitted.

■ The final assignment of error is based on alleged excessive damages. The court allowed respondent, for his doctor and hospital bills, $46.50; for loss of wages, $100; for depreciation to his car, $100; for damages to his clothing, $15; and for his physical injuries, pain and suffering, $500, or a total of $751.50. Appellant complains only of the five-hundred-dollar item. Respondent sustained a fracture of the shoulderblade, lacerations about his face and head, bruises to his back and legs, and nervous shock. We have observed that respondent's head and shoulders were dragged along the pavement, over the curb, and into the vacant lot, a distance of about one hundred feet, that he was incapacitated from work for several weeks and, according to his statement, suffered much pain

and discomfort. For the injuries sustained, we cannot say that the amount allowed was excessive.

The judgment is affirmed.

Millard, C. J., Tolman, Mitchell, and Geraghty, JJ., concur.

[No. 25993. Department One. May 19, 1936.]